IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 1:17-00093-KD-B |
| | ) |
| DUSTIN LEE McLELLAN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Dustin Lee McLellan's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),[1] letter in support, and addendum in support (Docs. 139, 141, 142), the United States' Response and exhibits in support (Docs. 150, 152 (SEALED)), and Defendant McLellan's Reply. (Doc. 155). Upon consideration, and for the reasons set forth herein, McLellan's motion is **DENIED**.

**I.    Background**

In July 2017, Defendant Dustin Lee McLellan (McLellan) was charged in a superseding indictment for three counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 29). Count One was severed from the other two counts and in August 2017, McLellan proceeded to trial on Count One. (Doc. 37). The jury returned a guilty verdict as to Count One. (Doc. 54). Then, in October 2017, McLellan pled guilty to Count One; the United States agreed to dismiss Count Three. (Docs. 83, 124).

---

[1] McLellan also challenges his sentence on various grounds. See (Doc. 139 at 4). Before filing this motion, McLellan filed a motion pursuant to 28 U.S.C. § 2255 in which he raises the same issues. (Doc. 136). And, as the United States correctly points out, a motion pursuant to § 2255 is the proper vehicle for raising those claims. United States v. Castro-Sanchez, 2021 WL 914176, at *2 (M.D. Fla. March 10, 2021). And, to the extent that McLellan's motion could be construed as a motion for release to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No.116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621), the motion is **DENIED**. See (Doc. 139 at 2 (requesting immediate release to home confinement)). The CARES Act does not give the federal courts authority to direct the Bureau of Prisons to allow a prisoner to serve their sentence on home confinement.

Pursuant to McLellan's presentence investigation report, McLellan qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"). (Doc. 91 at 8). And see (Doc. 129 (sentencing hearing transcript finding same)). His criminal history category was VI and he had a total offense level of 34; his Guideline range was 262 to 327 months. (Doc. 91 at 20). McLellan was sentenced to a mandatory term of imprisonment of 180 months as to both counts, to be served concurrently, followed by concurrent terms of five years of supervised release. (Doc. 129; 135).

McLellan is 39 years old and is incarcerated at FCI Yazoo City Medium. *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited April 16, 2021). His expected release date is December 10, 2029. (Id.). As of April 19, 2021, six staff members at FCI Yazoo City Medium were positive for COVID-19, no inmates were positive. *COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited April 20, 2021). One hundred and sixty seven (167) inmates and 10 staff members had recovered from COVID-19; no deaths were reported. (Id.).

## II.     Procedural requirements

Before Section 603(b) of the First Step Act of 2018 was enacted, the district court could grant a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the compassionate release provision, only if the Director of the Bureau of Prisons filed the motion. Now, in relevant part, the statute, as amended by the First Step Act of 2018, provides that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…

18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

The United States contends "McLellan has not demonstrated that he exhausted his administrative remedies." (Doc. 150 at 16). McLellan states that he "filed [an] electronic request with the Warden over a month ago to no avail." (Doc. 139 at 2). But, the United States responds that "he has not provided any documentary evidence in support of that assertion." (Id. (referencing Doc. 139 at 2)).

In United States v. Harris, 989 F.3d 908 (11th Cir. 2021), the Eleventh Circuit explained that the "exhaustion requirement of § 3582(c)(1)(A) is a claim-processing rule." 989 F.3d at 911. "Claim-processing rules require 'that the parties take certain procedural steps at certain specified times.'[and] [t]hey 'may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it,' but they are not jurisdictional." Id. (citing Fort Bend Cnty. v. Davis, 139 S.Ct. 1843, 1849-50 (2019)) (internal citations omitted). Accord United States v. Lee, 2021 WL 1292754, at *2 (11th Cir. April 7, 2021).

McLellan claims that he "was very careful to make sure" he followed these procedural steps before filing his motion in this Court. (Doc. 155 at 1). He states proof of this is "available if the Government will just look" because he does "not have the ability to print the email off" as the United States does. (Id.). Specifically, McLellan claims he "followed up with a written request to the Warden and Assistant Warden detailing my request for Compassionate Release concerning my health issues. This was dated September 4th 2020." (Id.). According to McLellan, he also asked the Warden about his request in person two weeks after his written request. (Id.).

The Court will assume that McLellan complied with the procedural requirements.

### III.     Compassionate release

Even if McLellan has exhausted his administrative remedies, he has not shown that "extraordinary and compelling" reasons warrant a reduction in sentence as discussed *infra*. See 18 U.S.C. § 3582(c)(1)(A). Once a sentence is imposed, the "authority of a district court to modify an

3

imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730, (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable Policy Statement, U.S.S.G. § 1B1.13, has not been amended since the enactment of the First Step Act. So, the Sentencing Commission has not set out the policy to apply when inmates file the motion. Instead, the Policy Statement sets out the policy to apply "[u]pon motion of the Director of the Bureau of Prisons." Id.

However, in United States v. Granda, - - - Fed. Appx. - - -, 2021 WL 1246252, at *1 (11th Cir. Apr. 5, 2021), the Eleventh Circuit recently stated:

> We've not yet held in a published opinion whether § 1B1.13, which on its face applies only to motions for compassionate release filed by the BOP and has not been amended following the First Step Act, constrains district courts in considering compassionate release motions filed by prisoners themselves. However, we've held that the district court's consideration of the policy statements in § 1B1.13 was not an abuse of discretion.

Granda, 2021 WL 1246252, at *1 (citing United States v. Harris, - - - F. 3d - - -, 2021 WL 745262, *3 & n.2 (11th Cir. Mar. 2, 2021).

>The Eleventh Circuit further states that:
>
>>Section 3582(c)(1)(A) still requires any reduction to be consistent with the sentencing commission's applicable policy statements.  The policy statements applicable to § 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13, and provide that the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a),[1] to the extent that they are applicable," it finds, in relevant part, that extraordinary and compelling reasons warrant the reduction. The court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), <u>before</u> it can determine whether extraordinary and compelling reasons exist. U.S.S.G. § 1B1.13; id., comment. (n.1).  In determining whether an individual is a danger to others, the court can consider: (1) the offenses' nature and circumstances; (2) the weight of the evidence against the person; (3) the person's history and characteristics; (4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release. 18 U.S.C. § 3142(g).
>
>>\*\*\*
>
>>Footnote 1.  The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to  avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

United States v. Granda, 2021 WL 1246252, at *1 (underlining in original).

McLellan contends his liver disease makes him "more prone to the COVID-19 virus" and that the health practices at FCI Yazoo Medium "pretty much guarantee that [McLellan] and the rest of us are s[i]tting ducks waiting to be infected." (Doc. 139 at 1).[2] According to McLellan, he has "a deadly chronic disease by itself let alone one that weakens my immune system and guarantees severe problems at the least if I get COVID-19." (Doc. 155 at 2). Specifically, McLellan asserts his medical records show he has abnormal levels "meaning [his] enzyme levels are elevated noting complications from the disease already." (Doc. 155 at 2).

McLellan also relies on his family situation—that he needs to and wants to take care of his father and his son. (Doc. 141).[3] Specifically, McLellan notes that his father lives in a nursing home and he is his father's only son. (Doc. 139 at 3, Doc. 141 at 2). McLellan also notes that his only son is "watching his mother die of thyroid cancer…and trying to take care of her and his little 9 year old sister and he makes only $500 a week…" (Doc. 141 at 2). McLellan expresses he needs to be released so that he can help, and be with, both his father and his son. (Id.).

---

[2] McLellan also complains of his conditions of confinement. McLellan complains of prolonged confinement in a "small cell," infrequent showers, spoiled food and "violent episodes" between inmates and staff. (Doc. 142 at 1). However, claims that concern conditions of a prisoner's confinement are *Bivens* actions. See Hill v. McDonough, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.") (citations omitted). And, claims that federal prison officials violated an inmate's constitutional rights would fall under *Bivens*, not 42 U.S.C. § 1983, which addresses claims against state officials. Regardless, the same case law is generally applied to both *Bivens* and § 1983 cases. See Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995).

Also, to the extent that McLellan's claim could be construed as a civil rights claim against officials at FCI Yazoo City Medium, for violations of his constitutional rights, this Court lacks personal jurisdiction. Those claims must be brought in the district court in the district where the prison officials reside or are employed. See Cosby v. United States, 2009 WL 2821843 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is improper.") (citations omitted). And, to the extent that this could be construed as a civil rights claim against the Bureau of Prisons, the Court lacks subject matter jurisdiction. Nalls v. Coleman Low Federal Inst., 307 Fed.Appx. 296, 298 (11th Cir. 2009) ("As an initial matter, the district court lacked subject matter jurisdiction over Nalls's claims against the Bureau of Prisons because Bivens does not extend to federal agencies").

[3] Initially, McLellan also noted his elderly grandmother needed his care and help. (Doc. 139 at 3). McLellan's letter in support informed the Court that his grandmother passed away. (Doc. 141 at 2).

McLellan also asks the Court to take into consideration that he suffers from "PTSD, agoraphobia, generalized anxiety disorder, anti-social behavior disorder and severe depression. (Doc. 139 at 2). He states he is "at a Care level 1 facility where there is no treatment offered and no medication of any type allowed." (Id.). McLellan states he has been clean for "a long time," has "been a regular enrolled in programming and church as well as recently been put in for low custody by [his] case manager." (Doc. 141 at 2). He maintains he has a clean disciplinary record and "has been in 47 months…and [his] guidelines are 18-24 months."[4] (Id.).

The United States agrees that McLellan's medical records indicate he has chronic viral hepatitis C which was noted first in March 13, 2018. (Doc. 150 at 17 (Doc. 152 at 43 (SEALED))). The Centers for Disease Control and Prevention considers hepatitis C to be a chronic liver disease which "can make [an individual] more likely to get severely ill from COVID-19." *What to Know About Liver Disease and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last updated February 8, 2021); *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#liver-disease (last updated March 29, 2021). And see (Doc. 150 at 18 (acknowledging same)). But, per the United States, McLellan "has not alleged, and his medical records do not reflect, that his hepatitis C is not well controlled or that the disease prevents him from providing self-care." (Doc. 150 at 18).

To qualify as extraordinary and compelling, an inmate's medical condition must be "serious and advanced ... with an end of life trajectory," or must be serious enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care within the environment of a correctional

---

[4] McLellan's guidelines were 262-327 months with a statutory 180 month mandatory minimum as to each count. McLellan argued in his direct appeal that he was not subject to the ACCA and should not have been sentenced to the mandatory minimum. The Eleventh Circuit did not address the issue, but rather remanded and directed the undersigned to amend the judgment to reflect the alternative sentence of 10 years and 5 years to be served consecutively. (Doc. 132) Currently pending is a petition for habeas relief in which McLellan re-urges the issue related to the 15 year mandatory minimum.

facility and ... he or she is not expected to recover [from it]." U.S.S.G. § 1B1.13, cmt. n.1(a)(i). McLellan alleges that he has sought treatment for his hepatitis C, but provides no evidence that his medical condition is diminishing his ability to provide self-care in prison. Thus, McLellan does not qualify for relief based on his health.

Moreover, the McLellan's family situation does not warrant release. Application Note 1(C) outlines certain "Family Circumstances" which may rise to the level of "extraordinary and compelling" to warrant a reduction in sentence under Section 2582(c)(1)(A). U.S.S.G. § 1B1.13, cmt. n.1(C):

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, cmt. n.1(C).

McLellan's father, who is not a relative covered by the provision, is in a nursing facility, so he is presumably being cared for by the staff at that facility. Moreover, considering McLellan's extensive criminal history and drug use, there is no indication that McLellan would be able to provide proper care, despite his good intentions. And as with McLellan's father, McLellan's son does not fall within one of the categories listed in Application Note 1(C), "Family Circumstances;" his son is not a minor. U.S.S.G. § 1B1.13, cmt. n.1(C).[5]

But even if McLellan provided evidence of circumstances that were extraordinary and compelling, he would still not be eligible for release. As explained *supra*, the Court must determine that the defendant is not a danger to the safety of any other person or to the community, <u>before</u> extraordinary and compelling allow for release. <u>United States v. Granda</u>, 2021 WL 1246252, at *1.

There is insufficient evidence to support a finding that McLellan is no longer a danger to the community.

As recounted by the Eleventh Circuit:

> [B]y the time of his convictions in the current case at age thirty-five, McLellan had at least fourteen prior convictions. For example, in 1999, McLellan was convicted of one of his first- degree burglaries for breaking into a dwelling and stealing two shotguns, a rifle, and a hunting bow. In a different burglary, he was armed with a gun and stole two shotguns and three pistols. In 2003, McLellan was convicted of third-degree domestic violence after punching a victim twice in the face. Additionally, by the time he reached his thirties, McLellan had become heavily involved with the possession, manufacture, and sale of drugs. In 2012, McLellan was convicted of two counts related to the unlawful manufacture of controlled substances. By the time of his sentencing in this case, he had additional charges pending on five counts of possessing a controlled substance, two counts relating to the possession and sale of drug paraphernalia, one count of attempting to elude, and two counts of unlawfully possessing a pistol. The probation office also notified the district court that while McLellan was awaiting sentencing in this case, he had made a knife while in prison and had stabbed three inmates with it. **In short, McLellan's criminal history demonstrates a strong disrespect for the law as well as a consistent pattern of violence.**

United States v. McLellan, 958 F.3d 1110, 1116-17 (11th Cir. 2020). And see (Doc 132 at 12-13) (same). So, despite McLellan contentions otherwise, the only evidence before the Court is that McLellan continues to be a danger to the community.

IV.    **Conclusion**

For the reasons discussed herein, Defendant McLellan's motion for compassionate release (Doc. 139) is **DENIED**.

**DONE** and **ORDERED** this **27th** day of **April 2021**.

s / Kristi K. DuBose<br>
**KRISTI K. DuBOSE**<br>
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[5] In January 2018, McLellan's son Michael (which is who McLellan references in Doc. 141) was 17 years old. (Doc. 91 at 16 (SEALED)). Thus, Michael is no longer a minor.